UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KAREN JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:23-cv-00594-JAR |
| | ) |
| ST. LOUIS COUNTY, MISSOURI, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion of plaintiff Karen Jones for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the motion, the Court finds that it should be granted. 28 U.S.C. § 1915(a)(1). Additionally, for the reasons discussed below, the Court will dismiss this action without prejudice. *See* Fed. R. Civ. P. 12(h)(3) and 28 U.S.C. § 1915(e)(2)(B).

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To avoid dismissal, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983,[1] naming St. Louis County, Missouri as the sole defendant. (Docket No. 1 at 2-3). The complaint contains allegations that a St. Louis County judge erred by granting a full order of protection against plaintiff, which she wants vacated. (Docket No. 1 at 5).

In the "Statement of Claim," plaintiff asserts that the full order of protection was entered on December 1, 2022, and that it amounts to a "conspiracy against rights, conspiracy to misrepresentation, conspiracy to obstruct justice, abuse of process, abuse of discretion, [and] due process violations of procedural and substantive law." (Docket No. 1 at 6, 8). The protection order at issue was entered in *Mierisch v. Jones*, No. 22SL-PN04432 (21st Jud. Cir., St. Louis County).[2] (Docket No. 1 at 6). According to plaintiff, the order was issued "illegally because she filed a 96 hour hold on a family member." Apparently, this family member is plaintiff's daughter. (Docket No. 1 at 7).

---

[1] Plaintiff cites a number of other potential jurisdictional bases for this case, including the Violence Against Women Act, 18 U.S.C. § 2265, Federal Rule of Civil Procedure 60, 18 U.S.C. § 241, and 18 U.S.C. § 242. None of these statutes or rules give the Court subject matter jurisdiction. Specifically, while the Violence Against Women Act "created a federal civil remedy for the victims of gender-motivated crimes of violence," that statute was held unconstitutional by the Supreme Court. *See Gonzales v. Rich*, 545 U.S. 1 at 25 (2005). *See also United States v. Morrison*, 529 U.S. 598, 602 (2000). In any event, nothing in the complaint below alleges any facts indicating that plaintiff has been the victim of a gender-motivated crime of violence. Rather, she is alleging that a state court should not have ordered an order of protection against her. As to 18 U.S.C. § 2265, this statute gives full faith and credit to the protection orders entered by a state, Indian tribe, or territory. It does not provide a civil cause of action, and has no relevance to plaintiff's contention that an order of protection was wrongly brought against her. Meanwhile, Rule 60 of the Federal Rules of Civil Procedure relates to relief from a judgment or order; it does not provide a cause of action for suit in federal court. Finally, both 18 U.S.C. § 241 and 18 U.S.C. § 242 are criminal statutes that do not provide a private right of action. *See U.S. v. Wadena*, 152 F.3d 831, 846 (8th Cir. 1998) ("Courts have repeatedly held that there is no private right of action under [18 U.S.C.] § 241, even though the statute allows federal authorities to pursue criminal charges"); and *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) (stating that only a United States prosecutor can bring a complaint under 18 U.S.C. §§ 241-242, and that the "statutes do not give rise to a civil action for damages"). Given that plaintiff references 42 U.S.C. § 1983, and alleges the violation of various constitutional rights, this case is most properly construed as a § 1983 civil rights complaint.

[2] The Court reviewed this case on Case.net, Missouri's online case management system. The Court takes judicial notice of these public records. *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (explaining that district court may take judicial notice of public state records); and *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (stating that courts "may take judicial notice of judicial opinions and public records").

Plaintiff contends that her daughter's allegations against her regarding physical violence, stalking, and harassment lacked sufficient evidence, and was not proven at trial. Indeed, she claims that she has not seen her daughter in two years. Plaintiff believes that her daughter sought the protection order "to silence [plaintiff] at a custody hearing" regarding plaintiff's granddaughter. She insists that the "full order of protection was based on a 96 hour hold filing, filing of grandparent rights, and abuse of process she did not deserve." Plaintiff further states that her daughter should not be allowed to get a protection order out of fear of "losing a custody hearing."

With regard to St. Louis County, plaintiff states that the county "allowed officers of the court to file false/bogus statements to obtain a temporary restraining order twice to eventually receive a full order of protection." (Docket No. 1 at 8). She also alleges that St. Louis County allowed plaintiff's daughter to receive a full order of protection in order to keep plaintiff from testifying at a custody hearing. Plaintiff further contends that the county allowed an attorney to interfere in the custody hearing by setting aside a 96-hour hold that a judge had signed.

In addition, plaintiff states that St. Louis County "allowed cover-ups of a known person who suffers mental illness"; that it "deliberately did not enter" the name of an attorney plaintiff hired to represent her; that it failed to train persons not to violate her constitutional rights; that it did not properly serve her; that it allowed the judge to sign a false restraining order; and that it "silenced" her. (Docket No. 1 at 8-9).

Attached to the complaint are fifty pages of exhibits. The Court has reviewed these exhibits and will treat them as part of the pleadings.[3] No purpose would be served by individually

---

[3] *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes"). *See also Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (stating that "while ordinarily, only the facts alleged in the complaint are considered in determining whether it states a claim, materials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint"); and *Pratt v. Corrections Corp. of America*, 124 Fed. Appx. 465, 466 (8th Cir. 2005) (explaining that "the district court was required to consider the allegations not only in [plaintiff's] pro se complaint, but also in his motion to amend, his response to defendants' motion to dismiss, and the attachments to those pleadings").

4

identifying each exhibit. Suffice to say, the exhibits include court orders, docket sheets, pictures, text messages, handwritten notes, a newspaper article, and letters.

Based on the above, plaintiff states that she has been humiliated, embarrassed, suffered emotional distress, and has endured "unnecessary family problems." (Docket No. 1 at 8). She also claims that her reputation has been damaged due to the "unconstitutional outcome and insufficient evidence of violence/stalking." As such, plaintiff asks the Court to vacate the full protection order in *Mierisch v. Jones*, No. 22SL-PN04432 (21st Jud. Cir., St. Louis County). (Docket No. 1 at 9).

### Motion to Vacate

Along with the complaint, plaintiff has filed a separate motion to vacate, containing additional allegations. (Docket No. 4). In the motion, she seeks to vacate the full order of protection entered by Judge Robert M. Heggie, because the order purportedly violates her rights to due process and equal protection, as well as the Missouri Adult Abuse Act and the Violence Against Women Act. (Docket No. 4 at 2).

To support her motion, plaintiff asserts that she filed a 96-hour hold on her daughter, "who suffers from mental illnesses," including depression and anxiety. Plaintiff states that her daughter has never been evaluated, but relies on a boyfriend to cover for her. She notes that this is "not normal behavior." At the trial on the protection order, plaintiff testified that she had not seen her daughter for a year, while the daughter testified she had not had contact with plaintiff for two years. Plaintiff thus concludes "it should've been reasonably impossible to obtain a full order of protection for harassment, stalking, or unpredictable tales of domestic/physical violence." She states that her daughter and her daughter's attorney are unhappy that plaintiff "intervened," which she did because "plaintiff's granddaughter is being abused and nobody has seen her for over 2 years." (Docket No. 4 at 2-3).

5

By way of further explanation, plaintiff states that she filed a 96-hour hold on her daughter on September 6, 2022. (Docket No. 4 at 3). An attorney identified as "Ms. Melissa" found out on September 13, "and filed a false ex parte temp order of protection" on September 14. Ms. Melissa also got the judge to set aside the hold. (Docket No. 4 at 6). The original court date of September 26, 2022 was continued until October 31, 2022, and then continued until December 1, 2022, after ineffective service of process. (Docket No. 4 at 3). During this time, the original judge – who plaintiff alleges has "previously been banned" from her cases – recused himself.

Following the entry of a full order of protection, plaintiff states that she timely filed for rehearing and requested copies of any recordings, but was ignored by St. Louis County clerks. As in the complaint, plaintiff objects to her daughter's testimony regarding violence, stalking, and harassment, and insists that her daughter's testimony related to "her childhood years over 20 years ago," with no bearing on the present. (Docket No. 4 at 3-4). Plaintiff insists there "was no harm or alarm for fear of physical harm," and that "Judge Heggie erred in granting a full order of protection or renewable order and infringed upon [her] constitutional rights." (Docket No. 4 at 4). She believes her daughter sought the protection order to keep her from attending custody hearings involving her granddaughter.

Though not named as a defendant, plaintiff claims that her attorney "did not defend her rights" and "misrepresented her." (Docket No. 4 at 5). Meanwhile, she accuses her daughter's attorney, Ms. Melissa, of not responding to plaintiff's attorney, and of never trying to settle. (Docket No. 4 at 7). Plaintiff also contends that "St. Louis County allowed attorney Melissa F. to file false statements," and that Ms. Melissa helped her daughter "fabricate" the protection order case. (Docket No. 4 at 8-9).

6

Because of the full order of protection, plaintiff states that she has suffered reputational harm, and has been looked "upon in a negative manner because of this matter." (Docket No. 4 at 9). Plaintiff thus argues that the "full order of protection should be considered for reversal and ordered to be vacated by this Court." (Docket No. 4 at 10).

## Discussion

Plaintiff is a self-represented litigant who has filed this civil action pursuant to 42 U.S.C. § 1983, seeking to have a state court protection order vacated. As she is proceeding in forma pauperis, the Court has reviewed her complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss this action without prejudice.

**A. Lack of Subject Matter Jurisdiction Under the *Rooker-Feldman* Doctrine**

Subject matter jurisdiction refers to a court's power to decide a certain class of cases. *LeMay v. U.S. Postal Serv.*, 450 F.3d 797, 799 (8th Cir. 2006). "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). *See also Gunn v. Minton*, 568 U.S. 251, 256 (2013) ("Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute"). The presence of subject matter jurisdiction is a threshold requirement that must be assured in every federal case. *Kronholm v. Fed. Deposit Ins. Corp.*, 915 F.2d 1171, 1174 (8th Cir. 1990). *See also Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987) ("The threshold requirement in every federal case is jurisdiction and we have admonished the district court to be attentive to a satisfaction of jurisdictional requirements in all cases"). "Subject matter jurisdiction can never be waived or forfeited." *Wagstaff & Cartmell, LLP v. Lewis*, 40 F.4th 830, 838 (8th Cir. 2022).

Because jurisdiction is a threshold requirement, the issue of subject matter jurisdiction may be raised at any time, by any party or the court. *Gray v. City of Valley Park, Mo.*, 567 F.3d 976, 982 (8th Cir. 2009). *See also City of Kansas City, Mo. v. Yarco Co., Inc.*, 625 F.3d 1038, 1040 (8th Cir. 2010) ("Federal courts have an independent duty to determine subject matter jurisdiction, even where the matter is raised for the first time on appeal and on the court's own motion"). The burden of proving subject matter jurisdiction belongs to the plaintiff. *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000). *See also Magee v. United States*, 9 F.4th 675, 680 (8th Cir. 2021) ("The burden of proving the existence of subject matter jurisdiction rests with the party invoking federal jurisdiction").

"The *Rooker-Feldman*[4] doctrine provides that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments." *Kvalvog v. Park Christian School, Inc.*, 66 F.4th 1147, 1152 (8th Cir. 2023) (quoting *Mosby v. Ligon*, 418 F.3d 927, 931 (8th Cir. 2005)). As the Supreme Court has explained, the doctrine bars federal courts from hearing cases brought by the losing party in state court proceedings that allege "injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). *See also Parker Law Firm v. Travelers Indemnity Co.*, 985 F.3d 579, 583 (8th Cir. 2021) (explaining that "inferior federal courts generally lack subject matter jurisdiction over cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings").

---

[4] *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923).

Since "jurisdiction to review most state court judgments is vested exclusively in the Supreme Court," federal "district courts may not review state court decisions, even if those challenges allege that the state court's action was unconstitutional." *Ballinger v. Culotta*, 322 F.3d 546, 548 (8th Cir. 2003). That is, "[f]ederal courts are not courts of review even for federal claims asserted in a state court proceeding." *Williams v. McKenzie*, 834 F.2d 152, 153 (8th Cir. 1987) (stating that federal court lacked jurisdiction to pass on merits of claim dismissed by state court, even though it was brought under 42 U.S.C. § 1983 and 42 U.S.C. § 1985). As a result, "a litigant cannot circumvent *Rooker-Feldman* by recasting his or her lawsuit as a [42 U.S.C.] § 1983 action." *See Bechtold v. City of Rosemount*, 104 F.3d 1062, 1065 (8th Cir. 1997).

For the *Rooker-Feldman* doctrine to apply, the state and federal claims need not be identical. *In re Goetzman*, 91 F.3d 1173, 1177 (8th Cir. 1996). Rather, a district court is prevented from exercising jurisdiction over a constitutional challenge if it is "inextricably intertwined with claims asserted in a state court proceeding." *Keene Corp. v. Cass*, 908 F.2d 293, 296 (8th Cir. 1990). "[T]he federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Id*. at 296-97. When federal relief can only be predicated on the conviction that the state court was wrong, the claim is "a prohibited appeal of the state-court judgment." *Id*. at 297.

*Rooker-Feldman* "is a narrow doctrine." *Lance v. Dennis*, 546 U.S. 459, 464 (2006). It is confined to cases brought by the losing party in a state-court action, and does not bar actions filed by nonparties to earlier state court judgments. *See Shelby County Health Care Corp. v. Southern Farm Bureau Casualty Ins. Co.*, 855 F.3d 836, 841 (8th Cir. 2017).

In addition, the *Rooker-Feldman* "doctrine is limited in scope and does not bar jurisdiction over actions alleging independent claims arising from conduct in underlying state proceedings."

9


*Hageman v. Barton*, 817 F.3d 611, 614 (8th Cir. 2016). *See also MSK EyEs Ltd. v. Wells Fargo Bank, Nat'l Assoc.*, 546 F.3d 533, 539 (8th Cir. 2008) ("The doctrine does not apply to cases that raise independent issues").

By way of example, "[i]f a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal court." *Riehm v. Engelking*, 538 F.3d 952, 965 (8th Cir. 2008). *See also Skit Intern., Ltd. v. DAC Technologies of Arkansas, Inc.*, 487 F.3d 1154, 1157 (8th Cir. 2007) (determining that *Rooker-Feldman* prevented jurisdiction over plaintiff's claim because plaintiff sought redress "directly from the state court judgment itself rather than from some separate injury caused by the defendant").

On the other hand, if "a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction." *Riehm*, 538 F.3d at 965 (determining that *Rooker-Feldman* did not apply where plaintiffs were not parties to ex parte petition for emergency protective care, and did not seek to overturn the ex parte order, but sought redress for an unlawful seizure under the Fourth Amendment). *See also Webb as next friend of K.S. v. Smith*, 936 F.3d 808, 817 (8th Cir. 2019) (determining that *Rooker-Feldman* did not bar plaintiffs' 42 U.S.C. § 1983 claim against county and two county employees for taking their minor children into emergency protective custody, because plaintiffs did "not appear to be seeking to get out from under a state-court judgment," but were "trying to obtain damages from state actors who allegedly violated their rights").

In this case, the *Rooker-Feldman* doctrine bars jurisdiction. Though plaintiff periodically complains about her attorney, her daughter's attorney, and her daughter, this action is not directed at the adverse parties of her state case. Rather, plaintiff has specifically asserted that the state court

decision to enter a full protection order against her was erroneous, and seeks relief from that judgment. As plaintiff repeatedly states in both the complaint and the motion to vacate, she is seeking the reversal of the decision in *Mierisch v. Jones*, No. 22SL-PN04432 (21st Jud. Cir., St. Louis County), and the vacating of that judgment. In other words, plaintiff seeks to get out from under a state court judgment, following an adverse decision. *Rooker-Feldman* prevents this Court from entertaining plaintiff's request. This Court simply does not have the jurisdiction to act as an appellate court for state court decisions. Therefore, this case must be dismissed.

### B. Failure to State a Claim Against St. Louis County

Even if the Court had subject matter jurisdiction, plaintiff has failed to state a claim against St. Louis County, the only defendant named in this case. A local governing body such as St. Louis County can be sued directly under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). To prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which a plaintiff can potentially assert a municipal liability claim.

First, a plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829

F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, a plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, a plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate indifference, a plaintiff must prove that the municipality "had notice that its procedures were

12

inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017). As with an unconstitutional custom, a "failure to train or supervise must be the moving force behind the constitutional violation." *See Doe v. Fort Zumwalt R-II Sch. Dist.*, 920 F.3d 1184, 1189 (8th Cir. 2019).

A plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). In this case, plaintiff has not presented any facts supporting the proposition that St. Louis County has an unconstitutional policy or custom, or that it was deliberately indifferent in failing to train its employees.

First, with regard to policy, plaintiff points to no St. Louis County policy statement, ordinance, regulation, or official decision as being at issue in this case. Certainly, she has not presented any facts indicating that she was harmed by "a deliberate choice of a guiding principle or procedure made by the [St. Louis County] official who has final authority regarding such matters." Rather than establishing the existence of a county policy, her facts – such as they are – focus solely on the decisions made by a state court judge. There are no allegations regarding county action in the complaint.

Second, as to custom, plaintiff has not alleged "the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by" St. Louis County employees, much less that county policymaking officials were deliberately indifferent to or tacitly authorized such

13

misconduct. Again, as noted above, there is no indication that any St. Louis County employees are even involved here, as the complaint focuses on the decision made by a state circuit judge in a protection order hearing. In any event, plaintiff has failed to demonstrate a single instance of unconstitutional misconduct by a St. Louis County employee, let alone a persistent pattern.

Likewise, regarding a failure to train, a plaintiff is required to demonstrate that St. Louis County acted with deliberate indifference. This can be done by alleging a "pattern of similar constitutional violations by untrained employees," thereby showing that the county had notice that its training procedures were inadequate. In this case, though, plaintiff has not even attempted to establish a pattern of constitutional violations. Instead, her complaint rests on allegations against a state court judge – not a county employee – who entered a protection order against her following a trial. This is inadequate to show that St. Louis County was constitutionally deficient in training or supervising its employees, or even that county employees were involved in this matter.

For all of these reasons, plaintiff has failed to state a claim against St. Louis County. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights). Therefore, even if the Court had jurisdiction, this case would be subject to dismissal on initial review.

### C. Potential Claims Against Unnamed Defendants

As discussed above, the Court lacks jurisdiction under the *Rooker-Feldman* doctrine, as plaintiff is seeking to vacate a state court judgment. Even if the Court had jurisdiction, plaintiff has failed to demonstrate the liability of the sole named defendant, which is St. Louis County. With the understanding that complaints filed by pro se litigants must be liberally construed, the

Court further notes that plaintiff has not stated a claim against any of the other entities or individuals mentioned in the complaint.

### i.     Claim Against Circuit Court

While plaintiff names St. Louis County as a defendant, the allegations in her complaint actually implicate a judgment entered in the 21st Judicial Circuit Court, which is a Missouri state court. To the extent the complaint can be construed as including a claim against the state court, such a claim is barred by the Eleventh Amendment. *See Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); *Mildfelt v. Circuit Court of Jackson Cty., Mo.*, 827 F.2d 343, 345 (8th Cir. 1987) (explaining that "state courts as entities are not vulnerable to a [42 U.S.C.] § 1983 suit because they are protected by immunity under the eleventh amendment"); and *Harris v. Missouri Court of Appeals, Western Dist.*, 787 F.2d 427, 429 (8th Cir. 1986) (same). Eleventh Amendment immunity extends to claims for both money damages and injunctive relief. *See Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (stating that district court erred in allowing plaintiff to proceed against state university for injunctive relief, and remanding matter to district court for dismissal). Therefore, any claim against the state court that rendered adverse judgment against plaintiff is subject to dismissal.

### ii.     Claims Against Judges

In the "Statement of Claim," plaintiff accuses both Judge Lasater and Judge Heggie of erroneous rulings. Both of these judges are entitled to immunity. Judicial immunity provides judges with immunity from suit, allowing them to exercise the authority with which they are vested, and to act upon their own convictions. *See Hamilton v. City of Hayti, Missouri*, 948 F.3d 921, 925 (8th Cir. 2020). "Like other forms of official immunity, judicial immunity is an immunity

from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). This immunity applies even when the judge is accused of acting maliciously or corruptly. *Pierson v. Ray*, 386 U.S. 547, 554 (1967). *See also Woodworth v. Hulshof*, 891 F.3d 1083, 1090 (8th Cir. 2018) (stating that "judicial immunity is not overcome by allegations of bad faith or malice"). Moreover, "a judge will not be deprived of his immunity because the action he took was in error or was in excess of his authority." *Justice Network, Inc. v. Craighead Cty.*, 931 F.3d 753, 760 (8th Cir. 2019).

A judge's immunity from 42 U.S.C. § 1983 actions bars a plaintiff's recovery in all but two narrow sets of circumstances. *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012). First, a judge does not have immunity for non-judicial actions. *Duty v. City of Springdale, Ark.*, 42 F.3d 460, 462 (8th Cir. 1994). "An act is a judicial act if it is one normally performed by a judge and if the complaining party is dealing with the judge in his judicial capacity." *Birch v. Mazander*, 678 F.2d 754, 756 (8th Cir. 1982). *See also Justice Network, Inc.*, 931 F.3d at 760 (stating "that to determine whether an act is judicial, courts look to the particular act's relation to the general function normally performed by a judge").

Second, a judge is not immune from lawsuits based on actions taken in the complete absence of jurisdiction. *Duty*, 42 F.3d at 462. This is the case even if the judge's actions were judicial in nature. *Schottel*, 687 F.3d at 373. In the context of judicial immunity, however, the scope of the judge's jurisdiction is construed broadly. *Justice Network, Inc.*, 931 F.3d at 762. "[A]n action – taken in the very aid of the judge's jurisdiction over a matter before him – cannot be said to have been taken in the absence of jurisdiction." *Mireles*, 502 U.S. at 13.

In this case, there is no indication that either judge mentioned by plaintiff took a non-judicial action or acted in the complete absence of jurisdiction. To the contrary, the facts indicate

16

that both judges were acting in their judicial capacities, and that their actions – such as the rulings that plaintiff believes erroneous – were of the type normally performed by judges. Judicial immunity bars plaintiff's suit in such an instance, even if the judges' rulings were wrong. Therefore, even if the Court were to construe the complaint as containing claims against Judge Lasater and Judge Heggie, the claims would be subject to dismissal.

### iii. Claims Against Attorneys

Throughout the "Statement of Claim," plaintiff also accuses both her own attorney and the attorney representing her daughter of misconduct. In order to state a claim for relief under 42 U.S.C. § 1983, "a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010). With regard to the first element, a defendant can only be held liable pursuant to § 1983 for actions taken under color of state law. *Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008). *See also Magee v. Trustees of Hamline Univ., Minn.*, 747 F.3d 532, 535 (8th Cir. 2014) (stating that § 1983 "imposes liability for certain actions taken under color of law that deprive a person of a right secured by the Constitution and laws of the United States"); *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that § 1983 secures constitutional rights from government infringement, not infringement by private parties); and *Montano v. Hedgepeth*, 120 F.3d 844, 848 (8th Cir. 1997) (stating that pursuant to § 1983, "the challenged conduct must have been committed by one who acts under color of law").

When a private party acts under color of state law, it can be held liable under 42 U.S.C. § 1983. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). However, a private party may only be held liable "if it is a willful participant in joint activity with the State

17

or its agents." *Gibson v. Regions Fin. Corp.*, 557 F.3d 842, 846 (8th Cir. 2009). In order to state a claim against a private party under § 1983, the plaintiff "must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor." *Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993).

In this case, neither attorney is alleged to be a state actor. That is, neither is alleged to be employed by a governmental entity or otherwise acting under the color of law. Furthermore, there are no facts suggesting that either attorney was a "willful participant in joint activity with the State or its agents," or came to any kind of "meeting of the minds" with the state. As such, even if the Court was to construe the complaint as encompassing claims against these individuals, plaintiff has failed to demonstrate an essential element of a claim under 42 U.S.C. § 1983. Therefore, these claims would be subject to dismissal.

### D. Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (Docket No. 3). The motion will be denied as moot as this action is being dismissed without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

### E. Motion to Vacate Protection Order

Plaintiff has also filed a motion to vacate the protection order entered against her. (Docket No. 4). As discussed at length above, the Court does not have jurisdiction to act as an appellate court for state court decisions. In other words, federal district courts lack jurisdiction to simply change a state court judgment. *See Kvalvog*, 66 F.4th at 1152 (explaining "that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments"). Therefore, the motion will be denied.

Accordingly,

18

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 3) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that plaintiff's motion to vacate the protection order against her (Docket No. 4) is **DENIED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice. *See* Fed. R. Civ. P. 12(h)(3); and 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this order of dismissal would not be taken in good faith.

Dated this 11th day of July, 2023.

*/s/ John A. Ross*
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**